Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| ALBERTO R. RIVERA ROSADO<br><br>Apelado<br><br>v.<br><br>GARDINE M. COLÓN GUERRA<br><br>Apelante | KLAN202400697 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Civil núm.: CG2023RF00681<br><br>Sobre: Custodia, Relaciones Filiales, Alimentos |

Panel integrado por su presidenta la juez Lebrón Nieves, la jueza Romero García y el juez Rivera Torres.

**Rivera Torres, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 26 de septiembre de 2024.

Comparece ante este tribunal apelativo, la Sra. Gardine M. Colón Guerra (señora Colón Guerra o apelante), mediante el recurso de *Apelación* de epígrafe solicitándonos que revoquemos la *Sentencia y Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI), el 28 de junio de 2024, archivada en autos al día siguiente. Mediante este pronunciamiento, el foro primario dictó una *Sentencia Declaratoria* declarando que la Escritura Núm. 13 sobre *Divorcio por Consentimiento Mutuo* constituye la fuente de las relaciones jurídicas que rigen a las partes en el presente pleito y que, a partir de sus términos, se dispondrá de cualquier modificación. Además, en el referido dictamen el foro *a quo* emitió una *Resolución* donde declaró *No Ha Lugar* a la solicitud de reconsideración instada por la apelante y refirió el caso a la atención inmediata de la Examinadora de Pensiones Alimentarias.

Por los fundamentos que expondremos a continuación, confirmamos el dictamen apelado.

## I.

En el presente caso, las partes se divorciaron el 22 de octubre de 2022 en sede notarial mediante la Escritura Núm. 13 sobre *Divorcio por Consentimiento Mutuo* otorgada por la Lcda. Jerusa Cruz Alfaro.[1] A la referida escritura se unió como documento complementario la *Estipulación y Acuerdos sobre Divorcio por Consentimiento Mutuo,* autenticado mediante afidávit número 726 juramentado también por la Lcda. Jerusa Cruz Alfaro.[2] En la referida estipulación las partes acordaron, entre otros asuntos, que la patria potestad y la custodia sería compartida. En cuanto a la pensión alimentaria, acordaron que "en virtud de la CUSTODIA COMPARTIDA A TIEMPO IGUAL, cada padre asume los gastos de vivienda, alimentos, vestimenta y todos los gastos en su hogar durante el tiempo que le corresponda relacionarse con sus hijos."[3] Además, el Sr. Alberto R. Rivera Rosado (señor Rivera Rosado o apelado) asumió el pago del 100% de todos los gastos de educación y los gastos médicos. La referida escritura fue registrada en el Registro Demográfico.[4]

El 11 de febrero de 2023, las partes voluntariamente suscribieron nuevos acuerdos mediante un documento intitulado *Modificación a Estipulación y Acuerdos sobre Divorcio por Consentimiento Mutuo,* autenticado mediante afidávit número 753 juramentado por la Lcda. Jerusa Cruz Alfaro. Surge de este escrito que las partes decidieron modificar los acuerdos relacionados a la custodia, relaciones paternas y pensión alimentaria. En esencia, acordaron que la custodia se ejercería de forma monoparental por la madre, la señora Colón Guerra, y la pensión alimentaria a pagar por el señor Rivera Rosado era de $3,000 mensuales, efectiva al 1

---

[1] Véase, Apéndice del Recurso, a las págs. 40-48.
[2] *Íd.*, a las págs. 53-63.
[3] *Íd.*, a la pág. 57.
[4] *Íd.*, a la pág. 64.

de febrero de 2023, y pagada entre los primeros cinco (5) días de cada mes. Asimismo, se convino que los restantes acuerdos, adoptados en la escritura de divorcio, permanecerían inalterados.[5]

El 27 de septiembre de 2023, el señor Rivera Rosado instó una *Demanda* sobre custodia, relaciones paternofiliales y alimentos.[6] Alegó que, el 11 de febrero de 2023, las partes voluntariamente modificaron, mediante Declaración Jurada, los acuerdos suscritos en la Escritura Núm. 13 del 22 de octubre de 2022 sobre *Divorcio por Consentimiento Mutuo*. En esencia, adujo que la comunicación entre las partes se ha visto "seriamente lacerada … a tal grado, que el pasado mes de julio de 2023 la aquí demandada gestionó y logró que se emitiera una *Orden de Protección* Ex-Parte al amparo de la Ley 54 (OP-2023-035532)[…]."[7] Respecto a los alimentos, arguyó que la vaguedad del acuerdo crea desavenencias, principalmente en el cobro de los reembolsos.[8] Por lo cual, solicitó relaciones paternofiliales provisionales, que esta petición sea referida a la Unidad de Trabajo Social, y los alimentos sean remitidos al Examinador de Pensiones Alimentarias (EPA), pero que se excluya la utilización de reembolsos.[9]

La señora Colón Guerra presentó su *Oposición a Revisión de Pensión Alimentaria y Solicitud de Desestimación en cuanto a dicho Asunto*. En el referido escrito, esta indicó que las partes están intentando resolver los asuntos de manera no contenciosa por lo que solicitó una prórroga. En relación a los alimentos, solicitó la desestimación por entender que no han transcurrido tres (3) años, desde el acuerdo suscrito en la declaración jurada, para que proceda su modificación. Añadió que tampoco ha ocurrido cambio sustancial

---

[5] *Íd.*, a las págs. 66-69.
[6] *Íd.*, a las págs. 77-86.
[7] *Íd.*, a la pág. 82.
[8] *Íd.,* a la pág. 85.
[9] *Íd.,* a la pág. 87.

alguno que amerite revisar la pensión.[10] Indicó, además, que el acuerdo, alcanzado, reconocido y juramentado ante notario, el 11 de febrero de 2023, atendió y recogió la voluntad de las partes.

Luego de presentadas varias mociones por las partes de epígrafe, el 26 de diciembre de 2023, notificadas al día siguiente, el foro apelado atendió dichas mociones y entre las dictadas declaró *No Ha Lugar* a la desestimación solicitada por la señora Colón Guerra.[11]

En desacuerdo con el dictamen, esta solicitó su reconsideración.[12] Reiteró que los menores <u>tienen una pensión alimentaria fijada por acuerdo entre las partes y no ha ocurrido un cambio sustancial que amerite su modificación</u>.

El 11 de abril de 2024, se celebró la *Vista de Discusión de Moción* a la que comparecieron las partes y sus representaciones legales.[13] Allí, el tribunal apelado expresó que las relaciones familiares son constantemente cambiantes, **que los asuntos de familia no constituyen cosa juzgada**, y "[t]ratándose este asunto de una determinación de divorcio en sede notarial procesalmente este tribunal no puede entrar a atender asunto, a menos que sea emitida una sentencia declaratoria al amparo de la Regla 59.1 de [P]rocedimiento [C]ivil para entonces traer el acuerdo, darle vida en el tribunal e iniciar el proceso."[14] Así, ordenó a las partes presentar un *Memorando de Derecho* sobre si "al momento de determinarse emitirse la sentencia declaratoria para dar vida a los acuerdos alcanzados[,] si el tribunal debe tomar o no en consideración la declaración jurada o si únicamente tiene validez la escritura original de divorcio suscrita en octubre de 2022."[15]

---

[10] *Íd.,* a la pág. 90.
[11] *Íd.,* a las págs. 120, 122.
[12] *Íd.,* a las págs. 127- 133.
[13] *Íd.,* a la pág. 142.
[14] *Íd.,* a las págs. 143-144.
[15] *Íd.,* a la pág. 144.

En cumplimiento con la referida orden, el 26 de abril de 2024 la señora Colón Guerra presentó una *Moción en Cumplimiento de Orden y para que se Dicte Sentencia Declaratoria Respetando la Relación Contractual entre las Partes* en la que expuso que los casos de alimentos de menores, nunca es cosa juzgada, por lo que para revisar una pensión alimentaria no hay que dictar una sentencia declaratoria. No obstante, apuntaló que, respecto a los acuerdos del divorcio sobre custodia y alimentos de los tres hijos que fueron modificados el 11 de febrero de 2023, procede el dictamen declarativo, ya que los actos del apelado "colocaron en total incertidumbre y riesgo la estabilidad de la demandada y sus tres hijos menores de edad."[16] Además, indicó que este mecanismo corresponde para recoger los referidos pactos posteriores.

Ese mismo día, el señor Rivera Rosado instó un *Memorando* en donde argumentó que "el caso de autos representa el único mecanismo procesal adecuado para atender cualquier modificación que pretendan realizar las partes a un divorcio celebrado en sede notarial.... Dadas las circunstancias que en adelante se detallan, procede que el Tribunal, mediante el mecanismo de sentencia declaratoria, eleve a dictamen judicial el contenido de la escritura de divorcio otorgada por las partes de epígrafe y luego de ello, ordenar la continuación del trámite dirigido a la modificación de los acuerdos, dados los grandes cambios en las circunstancias."[17]

Analizados los escritos de las partes, el 28 de junio de 2024, archivada en autos al día siguiente, el foro *a quo* dictó la *Sentencia y Resolución* apelada. Indicó que las controversias a resolver eran las siguientes:[18]

- ¿Cuál es el mecanismo adecuado para modificar acuerdos sobre patria potestad, custodia, relaciones filiales y alimentos que fueron incluidos en una

---

[16] *Íd.,* a la pág. 150.
[17] *Íd.,* a la pág. 157.
[18] *Íd.,* a la pág. 36.

> Estipulación que forma parte de una Escritura Pública de divorcio en sede notarial?
> • Si procede o no reconsiderar el dictamen donde se declaró no ha lugar a la solicitud de desestimación parcial y en el cual se dispuso referir el caso a la EPA.

Asimismo, analizados los hechos y la normativa de derecho aplicable el TPI razonó que:[19]

> …
> […] el mecanismo adecuado para darle vida judicial a la acción de autos es la Sentencia Declaratoria. Además, **disponemos que en el presente caso existen causas suficientes para que este Tribunal pueda concluir que existe un cambio sustancial en las circunstancias que rodean a las partes y a los menores, que requieren la intervención de un Examinador de Pensiones Alimentarias a los fines de determinar, conforme al Reglamento Número 9535**, […]
> …
> …
> …
> …
>
> Ahora bien, lo anterior no quiere decir que las partes estén impedidas de modificar las Estipulaciones que forman parte de la Escritura de Divorcio. Este Tribunal concluye que -en este caso y habiendo determinado que no procede la declaración jurada suscrita por las partes con posterioridad a la Escritura de Divorcio- cualquier modificación que se quiera hacer a los términos contenidos en la Escritura de Divorcio en Sede Notarial tiene que formalizarse mediante este mecanismo judicial. Para ello, el Instrumento Público tiene que ser elevado a dictamen judicial a través de una **Sentencia Declaratoria**.
> Conforme a las disposiciones de la Regla 59 de Procedimiento Civil, *supra,* este Tribunal dicta **SENTENCIA DECLARATORIA** y determina que el mecanismo legal para la modificación de los acuerdos sobre custodia, relaciones filiales, patria potestad y alimentos que incluyeron en la estipulación que forma parte de la Escritura Número 13 del 22 de octubre de 2022, sobre Divorcio por Consentimiento Mutuo, otorgada por las partes en este caso, es la vía ordinaria judicial como la de autos. Al así resolver, impartimos reconocimiento judicial a la referida escritura como punto de partida para cualquier trámite modificatorio posterior, en cuanto a las áreas que se refieren al derecho de familia.
> …
> …
> De un análisis desapasionado del expediente surgen las desavenencias de las partes que han afectado no tan solo la comunicación familiar, sino, la manera en que se dan las relaciones familiares entre las partes. **En ese sentido, las circunstancias …, hoy son totalmente distintas a lo acordado en la referida Escritura de Divorcio. En primer lugar, como cuestión de derecho conforme a lo determinado por la Sala Municipal, la fórmula de tiempo igual con cada**

---

[19] *Íd.,* a las págs. 36-38.

> **progenitor originalmente pactada sufrió un cambio sustancial y radical**.
>
> En segundo lugar, posterior al otorgamiento de la Escritura de Divorcio entró en vigor el Reglamento Número 9535, *supra,* **lo que constituye un cambio en la forma y manera en que computan las pensiones alimentarias**.
>
> Es por todo lo anterior, que, en el ejercicio de nuestra discreción, **resolvemos que procede el caso sea referido ante un EPA a los fines de revisar la pensión alimentaria**.
>
> [...]En su consecuencia, **nos reafirmamos en nuestra determinación y decretamos que no procede la solicitud de reconsideración presentada por la señora Colón Guerra**. [Énfasis en el original y nuestro y subrayado suplido]

Aún en desacuerdo, la apelante acude ante este foro apelativo mediante el recurso de apelación de epígrafe imputándole al TPI haber incurrido en los siguientes errores:

A. ERRÓ EL TPI, Y COMETIÓ ERROR CRASO EN DERECHO AL ENTENDER QUE PARA QUE LA ESCRITURA NÚMERO 13, SOBRE DIVORCIO POR CONSENTIMIENTO MUTUO, OTORGADA ANTE LA NOTARIO PÚBLICO, LCDA. JERUSA CRUZ ALFARO, EL 22 DE OCTUBRE DE 2022, SEGÚN REGISTRADA, CONSTITUYA LA FUENTE DE LAS RELACIONES JURÍDICAS QUE RIGE ENTRE LAS PARTES, PROCEDE DICTAR SENTENCIA DECLARATORIA AL AMPARO DE LA REGLA 59.1 DE PROCEDIMIENTO CIVIL.

B. ERRÓ EL TPI, ABUSÓ DE SU DISCRECIÓN, DE FORMA PARCIALIZADA Y COMETIÓ ERROR EN DERECHO AL NEGARSE A RECONOCER LA RELACIÓN CONTRACTUAL QUE POSTERIOR AL DIVORCIO SE CREÓ ENTRE LAS PARTES POR VIRTUD DE UN ACUERDO PRIVADO RECOGIDO EN UNA DECLARACIÓN JURADA "AFFIDAVIT" ANTE LA MISMA NOTARIO QUE LOS DIVORCIÓ.

C. ERRÓ EL TPI, ABUSÓ DE SU DISCRECIÓN, DE FORMA PARCIALIZADA Y COMETIÓ ERROR EN DERECHO AL NEGARSE A DICTAR SENTENCIA DECLARATORIA RECONOCIENDO LA RELACIÓN CONTRACTUAL QUE POSTERIOR AL DIVORCIO SE CREÓ ENTRE LAS PARTES POR VIRTUD DE UN ACUERDO PRIVADO RECOGIDO EN UNA DECLARACIÓN JURADA "AFFIDAVIT" POR ENTENDER DE FORMA ERRADA QUE ESTA PARTE PRETENDÍA MODIFICAR LA ESCRITURA CON UNA AFFIDAVIT.

D. ERRÓ EL TPI, ABUSÓ DE SU DISCRECIÓN, ACTUÓ DE FORMA PARCIALIZADA Y COMETIÓ ERROR CRASO EN DERECHO AL DENEGAR LA RECONSIDERACIÓN PRESENTADA POR ESTA

PARTE Y CON ELLO, EXPONER LA SEGURIDAD Y MEJOR BIENESTAR DE LOS MENORES EN CRASA VIOLACIÓN DE NUESTRO ORDENAMIENTO JURÍDICO.

E. ERRÓ EL TPI, ABUSÓ DE SU DISCRECIÓN, ACTUÓ DE FORMA PARCIALIZADA Y COMETIÓ ERROR CRASO EN DERECHO AL ORDENAR QUE LAS PARTES EJERCIERAN CUSTODIA COMPARTIDA EN IGUALDAD DE TIEMPO Y CUMPLIESEN CON LA SENTENCIA DECLARATORIA VIOLENTANDO LOS ACUERDOS CONTRACTUALES POSTERIORES Y LA DOCTRINA DE LOS ACTOS PROPIOS.

El 22 de agosto de 2024, dictamos una *Resolución* concediendo a la parte apelada hasta el 11 de septiembre siguiente para expresarse.

El 11 de septiembre de 2024, la parte apelada instó su oposición al recurso. Así, nos damos por cumplidos y a su vez, decretamos perfeccionado el recurso ante nuestra consideración.

Analizados las comparecencias de las partes, el expediente apelativo y estudiado el derecho aplicable, procedemos a resolver.

**II.**

*La Sentencia Declaratoria*

La Regla 59.1 de las Reglas de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 59.1 dispone:

Regla 59.1 Cuando Procede

El Tribunal de Primera Instancia tendrá autoridad **para declarar derechos**, **estados y otras relaciones jurídicas, aunque se inste o pueda instarse otro remedio**. No se estimará como motivo suficiente para atacar un procedimiento o una acción el que se solicite una resolución o sentencia declaratoria. La declaración podrá ser en su forma y efectos, **afirmativa o negativa**, y tendrá la eficacia y el vigor de las sentencias o resoluciones definitivas. Independientemente de lo dispuesto en la Regla 37, **el tribunal podrá ordenar una vista rápida** de un pleito de sentencia declaratoria**, dándole preferencia en el calendario**. [Énfasis nuestro]

En cuanto a quién puede solicitar una sentencia declaratoria, la Regla 59.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 59.2, establece:

Regla 59.2. Quiénes pueden solicitarla; facultad de interpretación; ejercicio de las facultades

(a) **Toda persona** interesada en una escritura, un testamento, **un contrato escrito u otros documentos constitutivos de contrato**, o cuyos derechos, estado u otras relaciones jurídicas **fuesen afectados** por un estatuto, una ordenanza municipal, un contrato o una franquicia, podrá **solicitar una decisión sobre cualquier divergencia en la interpretación o validez de dichos** estatutos, ordenanzas, **contrato** o franquicia, **y además que se dicte una declaración de los derechos, estados u otras relaciones jurídicas que de aquellos se deriven**. Un contrato podrá ser interpretado antes o después de haber sido infringido.

(b) [...]

(c) La enumeración hecha en los incisos (a) y (b) de esta regla, no limita ni restringe el ejercicio de las facultades generales conferidas en la Regla 59.1, dentro de cualquier procedimiento **en que se solicite un remedio declaratorio**, **siempre que una sentencia o decreto haya de poner fin a la controversia o despejar una incertidumbre**. [Énfasis nuestro].

Por tanto, la cuestión fundamental a determinar es, si los hechos que el demandante aduce <u>en su demanda de sentencia declaratoria</u> son demostrativos de que existe una controversia sustancial entre las partes; que tienen intereses legales adversos; y con suficiente inmediación, madurez y realidad que hacen aconsejable el remedio declaratorio. Se debe demostrar <u>la aserción o aseveración activa y antagónica de un derecho por una de las partes</u>, y que la otra haya negado la existencia de ese derecho; que se refiera la controversia a un conflicto real, y a su vez, que <u>el demandado actúe o amenace con actuar en tal forma que exista la probabilidad sustancial de que se lleve a cabo una invasión de los derechos del demandante</u>. *Asoc. de Periodistas v. González*, 127 DPR 704, a la pág. 722-724 (1991); *Moscoso v. Rivera*, 76 DPR 481, 492 (1954).

### *Divorcio por escritura pública en sede notarial*

En *Figueroa Ferrer v. ELA*, 107 DPR 250 (1978), nuestro Tribunal Supremo reconoció el consentimiento mutuo de los cónyuges como causa legítima para el divorcio. Además de ello, el alto foro dispuso que la acción habría de tramitarse mediante una petición conjunta, acompañada de estipulaciones referentes a la

división de bienes, el sustento de las partes y otras consecuencias del divorcio, tales como los alimentos de los menores.[20] Las estipulaciones contenidas en la petición de divorcio por consentimiento mutuo constituyen un contrato de transacción obligatoria para las partes. *Igaravidez v. Ricci*, 147 DPR 1 (1998).

Posteriormente, se aprobó la Ley núm. 52-2017 la cual enmendó el Artículo 97 del Código Civil de 1930, 31 LPRA sec. 331, para permitir el divorcio por consentimiento mutuo ante notario o notaria. El mismo disponía que:

> …
>
> Cuando **la acción de divorcio** se funde en "mutuo consentimiento", y este **vaya a concederse a través de la formalización de una escritura pública** a ser otorgada ante un Notario, este profesional deberá consignar en dicho documento, que la decisión de solicitar conjuntamente la disolución del vínculo matrimonial es voluntaria y que los peticionarios han llegado a esta, mediando la reflexión, y que a su vez, es libre de toda coacción, estando impedido el Notario de otorgar el divorcio, si a su entender los acuerdos incumplen con las formalidades que debe contener la escritura, de conformidad con la Ley Núm. 75 de 2 de julio de 1987, según enmendada, conocida como "Ley Notarial de Puerto Rico", o con cualesquiera otras disposiciones reglamentarias que sean promulgadas por el Tribunal Supremo, al amparo de la antes mencionada ley o cualquier otra aplicable.
> En el caso que los cónyuges que acuerden solicitar la disolución de su vínculo matrimonial ante Notario tengan bienes para liquidar, **deberán previo a otorgar la escritura de divorcio**, **alcanzar un acuerdo** para la liquidación de dichos bienes gananciales y/o comunidad de bienes. **Dicho acuerdo deberá ser juramentado** y deberá consignar que ambas partes fueron debidamente asesoradas por sus respectivos abogados y que es libre de coacción. **El Notario consignará en la escritura de divorcio que dicho acuerdo fue alcanzado previamente**, que fue libre de coacción y que ambas partes fueron asesoradas por sus respectivos abogados.
> En el caso que los cónyuges que acuerden solicitar la disolución de su vínculo matrimonial ante Notario, tuvieran hijos menores de edad, podrán establecer los términos y condiciones sobre los siguientes aspectos, **custodia, patria potestad, alimentos, relaciones filiales y hogar seguro, como parte de la estipulación a ser preparada por los representantes legales de las partes**, quienes a su vez tendrán la obligación de hacer constar en el escrito, que su cliente fue debidamente informado de los derechos que le asisten, y que en caso de no estar conforme con atender mediante este acto los asuntos relacionados con el o los menores, **siempre estará disponible la vía ordinaria**

---

[20] Véase, *Díaz Rodríguez v. García Neris*, 208 DPR 706, 720 (2022).

**en el tribunal**. Cualquier documento y/o escrito que incluya y exprese la voluntad de las partes comparecientes sobre la disposición de los bienes gananciales y/o los acuerdos relacionados a los menores será denominado como: "Estipulación y Acuerdos sobre Divorcio por Consentimiento Mutuo". **Dicho documento formará parte de la escritura de divorcio.** Todo caso que incluya incapacitados será de exclusiva competencia del Tribunal de Primera Instancia. En caso de que el divorcio por consentimiento mutuo se efectúe mediante escritura pública, **la misma advendrá final y firme con la firma de los comparecientes.**

Como es conocido, mediante la Ley núm. 55-2020 se aprobó el Código Civil de 2020. En lo aquí pertinente, el Artículo 423, 31 LPRA sec. 6761, dispone que "[l]a disolución del matrimonio por divorcio puede declararse mediante sentencia judicial o por escritura pública." Los Artículos 473 a 475, 31 LPRA sec. 6831 a 6833, establecen el procedimiento aplicable a los divorcios en sede notarial.

El Artículo 473, *supra*, establece que "[e]l matrimonio queda disuelto mediante el consentimiento de los cónyuges expresado en escritura pública, [...]. Cuando el matrimonio esté regido por la sociedad de gananciales y haya bienes o deudas comunes, los cónyuges **suscribirán un acuerdo** que contendrá el inventario, avalúo, liquidación y adjudicación de los bienes y deudas gananciales. **Este acuerdo será protocolizado con la escritura de divorcio, sin que dicha protocolización tenga efectos de convertir el documento contentivo del acuerdo, en un instrumento público**. Cuando los cónyuges tengan hijos menores de edad comunes a ambos, deben establecer los términos y condiciones sobre los siguientes aspectos: custodia, patria potestad, alimentos, relaciones filiales y hogar seguro, como parte de **una estipulación que será preparada por los representantes legales de cada cónyuge**. Dichos representantes legales harán constar a continuación de las firmas de los otorgantes en la estipulación, que su respectivo cliente fue debidamente informado de los derechos que

le asisten, y que en caso de no estar conforme con atender en ese acto los asuntos relacionados con el o los menores, **siempre podrán hacerlo ante un tribunal. Dicha estipulación se protocolizará con la escritura de divorcio.**" El Artículo 475, *supra*, establece que el otorgamiento de la escritura produce la disolución inmediata del vínculo matrimonial.

En relación al acuerdo sobre los bienes, la referida disposición claramente señala que el mismo será protocolizado con la advertencia de que dicha protocolización no tiene el efecto de convertir el documento contentivo del acuerdo en un instrumento público. El profesor Miguel R. Garay Auban nos comenta que dicha disposición "se incluyó con el propósito de no dar acceso al Registro [de la Propiedad] a esa estipulación." Garay Auban, Miguel R., *Compendio de Derecho de Familia*, Código Civil 2020, a las págs. 211-212. Asimismo, en cuanto a la estipulación o acuerdo sobre custodia, patria potestad, alimentos, relaciones filiales y hogar seguro, el profesor Garay señala: "Cuando se dice que los abogados "harán constar" significa que también firmarán la estipulación." Íd., a la pág. 212.

El Diccionario de la Real Academia Española (RAE) define el acto de protocolizar como "incorporar al protocolo una escritura matriz u otro documento que requiera esta formalidad."[21] El protocolo "[e]s la colección ordenada por secuencia numérica y fecha concordante de los instrumentos públicos matrices autorizados por un notario durante un año natural, incluso los documentos que le fueron incorporados inmediatamente después del mismo." Dra. Ruth E. Ortega-Vélez, *Diccionario de términos y frases Derecho Puertorriqueño*, Ediciones SITUM, 2022, a las págs. 253-254.

---

[21] Real Academia Española, https://dle.rae.es/procolizar (última visita, 27 de agosto de 2024).

Por su parte, con el propósito de orientar a los notarios y notarias sobre los aspectos que deben evaluar y cumplir al momento de autorizar una *Escritura de Divorcio por Consentimiento Mutuo* o **el testimonio de legitimación de firmas bajo el juramento** en el documento intitulado *Estipulación y Acuerdos sobre Divorcio por Consentimiento Mutuo,* el 31 de agosto de 2017, la Oficina de Inspección de Notarías (ODIN) publicó la Instrucción General #38 sobre divorcio por la causal de consentimiento mutuo celebrado ante notarios y notarias. Como preámbulo de la instrucción, la ODIN reiteró la intención legislativa expuesta en la Exposición de Motivos de la Ley núm. 52-2017 y particularizó que dicha pieza legislativa resalta la naturaleza no contenciosa del divorcio por la causal de consentimiento mutuo, frente a la naturaleza de la función pública del notariado en Puerto Rico, así como a la facultad de los notarios y notarias de dar fe y autenticar cualquier arreglo extrajudicial que se les presente.

### *Estándar revisión apelativa*

Es norma trillada que, en ausencia de error, prejuicio o parcialidad, los tribunales apelativos no intervendrán con las determinaciones de hechos, con la apreciación de la prueba, ni con la adjudicación de credibilidad efectuadas por el Tribunal de Primera Instancia. *González Hernández v. González Hernández,* 181 DPR 746, 776 (2011); *Ramírez Ferrer v. Conagra Foods PR,* 175 DPR 799, 811 (2009). En esencia, esta norma de deferencia judicial descansa en que el juez ante quien declaran los testigos es quien tiene la oportunidad de verlos y observar su manera de declarar, apreciar sus gestos, titubeos, contradicciones y todo su comportamiento mientras declaran; factores que van formando gradualmente en su conciencia la convicción sobre la verdad de lo declarado. *Suárez Cáceres v. Com. Estatal Elecciones,* 176 DPR 31, 68 (2009).

De otra parte, cuando se evalúa la prueba documental, el foro apelativo se encuentra en la misma posición que el foro de instancia. Al tener ante sí los mismos documentos que desfilaron ante el juzgador de instancia, no hay emociones o comportamientos que el juzgador apelativo esté dejando fuera de la ecuación. "Somos conscientes, naturalmente, que en relación con la evaluación de prueba documental este tribunal está en idéntica situación que los tribunales de instancia". *Trinidad v. Chade, supra,* 292 (2001), citando a *Díaz García v. Aponte Aponte,* 125 DPR 1 (1989), y a *Ramírez, Segal & Látimer v. Rojo Rigual,* 123 DPR 161 (1989).

### III.

En síntesis, la apelante señaló que el TPI erró al no reconocer la validez que tienen los acuerdos realizados por las partes en la declaración jurada, y al entender que los mismos no modificaron los que fueron previamente incluidos en la Escritura Núm. 13 sobre *Divorcio por Consentimiento Mutuo.* Por otro lado, argumentó que el foro apelado erró al dictar una *Resolución* declarando *no ha lugar* a la reconsideración presentada y, por ende, procede la desestimación de la demanda.

De entrada, comenzaremos atendiendo los errores relacionados a la *Sentencia Declaratoria.*

Luego de analizado el recurso, estamos contestes con lo expresado por el TPI respecto a que, existe un vacío jurídico, sobre el proceso adecuado de ejecución de lo pactado en la escritura de divorcio en sede notarial, una vez las partes modifican posteriormente los acuerdos que forman parte de esta mediante una declaración jurada. Por tanto, no cabe duda de que el foro apelado tenía ante sí una controversia sustancial relativa a relaciones jurídicas entre las partes y, estos a su vez, presentaban intereses legales adversos. En consecuencia, razonamos que el dictamen declaratorio constituía el mecanismo más adecuado para disipar si

los acuerdos, debidamente protocolizados y registrados, fueron válidamente modificados por la declaración jurada del 11 de febrero de 2023. Más aún, el foro apelado procuró conceder, mediante el decreto declaratorio, un remedio judicial respecto a las áreas que se refieren al derecho de familia.[22]

De otra parte, como consignamos en el trámite procesal, las partes se divorciaron por consentimiento mutuo en sede notarial y realizaron unas estipulaciones en cuanto a la custodia, relaciones paternofiliales y alimentos. Conforme dispone el Artículo 473 del Código Civil de 2020, antes citado, **dicha estipulación tiene que ser protocolizada**. Como nos comenta el Profesor Miguel Garay, dicha protocolización no tiene el efecto de convertir la estipulación en un instrumento público. No obstante, el estatuto aprobado carece de guías para el adecuado trámite de controversias como la de autos, como indicamos previamente. Así, el foro apelado razonó que "[l]a declaración jurada suscrita por las partes con posterioridad a la Escritura de Divorcio y Estipulación no goza de la formalidad exigida por nuestro ordenamiento jurídico."[23] Asimismo, determinó que la declaración jurada del 11 de febrero de 2023 no puede constituir la fuente de las obligaciones de las relaciones jurídicas entre la partes en este caso, ya que esta no formó parte de la Escritura de Divorcio ni de su estipulación, *debidamente protocolizada y registrada.*[24] Por lo cual, concluyó correctamente que cualquier modificación debe guardar la misma solemnidad. Ante este escenario, colegimos que el TPI no incurrió en error, prejuicio o parcialidad, al así resolver.

En fin, no se cometieron los errores A, B, C y E argumentados en cuanto a la *Sentencia Declaratoria* apelada.

---

[22] *Íd.,* a las págs. 37-38.
[23] *Íd.,* a la pág. 37.
[24] *Íd.*

Por otro lado, tampoco procede el reclamo desestimatorio de la apelante. Como se desprende del trámite procesal, el señor Rivera Rosado solicitó, mediante una *Demanda,* la modificación de los acuerdos por entender que existen cambios sustanciales que así lo ameritan. De hecho, el TPI consignó, correctamente, que "en el presente caso existen causas suficientes para … concluir que existe un cambio sustancial en las circunstancias que rodean a las partes y a los menores, …"[25] que requieren la intervención del foro judicial. Sin duda, "como cuestión de derecho conforme a lo determinado por la Sala Municipal [en el caso OPA-2023-035532],[26] la fórmula de tiempo igual con cada progenitor originalmente pactada sufrió un cambio sustancial y radical."[27] Además, reiteramos que ningún convenio y ninguna sentencia tiene en esta materia carácter definitivo. También se hace importante señalar que las salas especializadas de familia mantienen su jurisdicción para atender los asuntos relacionados a custodia, relaciones filiales y alimentos en el mejor interés de los menores.

Como bien señaló el apelado en su escrito en oposición, para la fecha de la radicación de la demanda, las circunstancias de la familia eran totalmente distintas a las que imperaban al momento del divorcio. Recordemos que los casos de familia están permeados del más alto interés público y tienen, además, un carácter *sui generis*.

De igual manera, en nuestro ordenamiento "las determinaciones de alimentos y de custodia de menores no constituyen propiamente cosa juzgada, ya que están sujetas a revisión judicial, en el tribunal de instancia, si ocurre un cambio en las circunstancias que así lo justifique, siempre, claro está, tomando

---

[25] *Íd.,* a la pág. 36.
[26] *Íd.,* a las págs. 70-76.
[27] *Íd.,* a la pág. 38.

en consideración los mejores intereses y el bienestar de los menores. *Santana Medrano v. Acevedo Osorio,* 116 DPR 298 (1985); *Centeno Alicea v. Ortiz,* 105 DPR 523 (1977)." *Figueroa v. Del Rosario,* 147 DPR 121, 128-129 (1998).

En consecuencia, no erró el TPI al declarar *no ha lugar* a la moción de desestimación y al denegar la reconsideración solicitada por la apelante. En este aspecto, actuó acertadamente al ordenar que el caso continue por la vía ordinaria y al referir el asunto de alimentos a la atención inmediata de un EPA. Esto, reiteramos, garantizando los mejores intereses y el bienestar de los menores.

Así las cosas, el error (D) no se cometió.

**IV.**

Por los fundamentos antes expuestos, confirmamos la *Sentencia* y *Resolución* apelada.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones